# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| CATHERINE F. LANGELLA, | ) |
| Plaintiff | ) ) ) |
| v. | ) Case No. 09-cv-312E |
| DOMINIC A. CERCONE, JR. et al., | ) ) ) |
| Defendants | ) ) ) |

## OPINION

Pending before this Court is Defendant John C. Egbert's "Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(6)" [Doc. #14]. For the reasons set forth below, Defendant Egbert's Motion to Dismiss is granted and the Amended Complaint filed against him by Plaintiff Catherine Langella ("Plaintiff") is dismissed with prejudice.

### I. Standards of Review

As explained by the Third Circuit Court in <u>Fowler v. UPMC Shadyside</u>, 578 F.3d 203 (3d Cir. 2009):

> when presented with a motion to dismiss for failure to state a claim, district courts should conduct a two-part analysis. First, the factual and legal elements of a claim should be separated. The District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions. <u>Id</u>. Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "plausible claim for relief." <u>Id</u>. at 1950. In other words, a complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to "show" such an entitlement with its facts. See <u>Phillips</u>, 515 F.3d at 234-35. As the Supreme Court instructed in <u>Iqbal</u>, "[w]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not 'show[n]'-'that the pleader is entitled to relief.'" <u>Iqbal</u>, 129 S.Ct. at 1949. This "plausibility" determination will be "a context-specific task that requires the reviewing court to draw on its

judicial experience and common sense." Id.

Fowler, 578 F.3d at 210-211. See also Iqbal, 129 S.Ct. at 1949 (quoting Bell Atlantic Corp. v. Twombly, 127 S.Ct. 1955, 1965-66 (2007) ("a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."); Twombly, 127 S.Ct. at 1965 (factual allegations of a complaint "must be enough to raise a right to relief above the speculative level."). "This [standard] 'does not impose a probability requirement at the pleading stage,' but instead 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of' the necessary element." Phillips v. County of Allegheny, 515 F.3d 224, 234 (3d Cir. 2008) (quoting Twombly, 127 S.Ct. at 1965). Thus, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Twombly, 127 S.Ct. at 1965 (citations omitted).

In examining a *pro se* complaint that has been challenged by a motion to dismiss, said complaint is to be liberally construed. Alston v. Parker, 363 F.3d 229, 234 (3d Cir. 2004) (citing Dluhos v. Strasberg, 321 F.3d 365, 369 (3d Cir. 2003)). Indeed, the Supreme Court has held that, after Twombly, the Court is required to hold a pro se complaint, "to less stringent standards than formal pleadings drafted by lawyers," however inartfully pled. Erickson v. Pardus, 127 S.Ct. 2197, 2200 (2007) (citing Estelle v. Gamble, 97 S.Ct. 285 (1975)). See also Holley v. Dept. of Veterans Affairs, 165 F.3d 244, 247-48 (3d Cir. 1999) (holding that the court must read a pro

se complaint for substance and apply the applicable law, regardless of whether the plaintiff used the appropriate names for his or her claims).

**II.     Factual Allegations.**

Relevant to her claims against Mr. Egbert, Plaintiff alleges Mr. Egbert was a duly-elected member of the McKean County Board of Commissioners at the time of the alleged violations of Plaintiff's rights under the United States Constitution. Amended Complaint, ¶ 10. Plaintiff further alleges that while she was incarcerated at the McKean County prison from November 2, 2007 until December 12, 2007 for violating the terms of her bail release after she allegedly hit her husband, the then Public Defender for McKean County, "she wrote dozen of letters, pleading for help, pleading for due process, pleading for fair and just treatment" to the McKean County Board of Commissioners, then-President Judge John M. Cleland, Judge John H. Yoder, and the local newspaper, The Bradford Era. Amended Complaint, ¶ 34. Plaintiff also alleges that "Bradford Era reporter Marcie Schellhammer agreed to meet with the Plaintiff at the jail to hear Plaintiff's allegations of corruption, abuse and civil rights violations. After meeting with Plaintiff for more than an hour, and looking at paperwork in Plaintiff's possession, Ms. Schellhammer appeared shocked and appalled at what she was hearing and what she had been shown. She told Plaintiff that she would 'do everything she could' to help Plaintiff, would do what investigating she could, and would return the following week. Ms. Schellhammer never returned." Id. at ¶ 35. Plaintiff then alleges that "[a]fter Plaintiff's release from prison, she phoned Ms. Schellhammer to ask why she had never come back to help her. Ms. Schellhammer related that then-County Commissioner and Board Chairman John E. Egbert had 'visited' the office of The Bradford Era personally and 'warned' employees of The Era against printing

3

anything derogatory about Plaintiff's husband while he was in the employ of McKean County. Ms. Schellhammer further stated that Defendant Egbert had 'asked for the name of our attorney', implying that the County would sue if the newspaper violated his directive." Id. at ¶ 36. Finally:

> Plaintiff avers that, based upon Defendant Egbert's conduct and interference with the potential assistance offered by Ms. Schellhammer and the newspaper, his actions contributed to Plaintiff's continued detention at the McKean at the McKean County Prison and further contributed to the refusal of the newspaper to publicize the destruction of Plaintiff's home and deaths and injury to Plaintiff's rescue animals. The newspaper's managing editor, Marty Wilder, had sent a photographer to Plaintiff's home on the day Plaintiff was released from prison, December 12, 2007. The photographer took pictures of the entire interior of Plaintiff's home, which clearly showed wall-to-wall animal feces and the damage and destruction of all of Plaintiff's household goods and furnishings. The photographs also showed clear evidence of animal cruelty and neglect with respect to Plaintiff's rescue animals, and the newspaper refused to either print any of the pictures or cover what would otherwise have been a high-priority and newsworthy story, if not for the intervention, interference and implied threats made by Defendant Egbert.

Id. at ¶ 37.

### III. Legal Analysis of Plaintiff's 42 U.S.C. § 1983 claim.

In her Amended Complaint, Plaintiff states as follows with respect to her claims against Mr. Egbert: "Plaintiff brings this suit pursuant to Title 42 U.S. Code §1983 for violation of certain protections guaranteed to her by the First, Fifth, Eighth, Ninth and Fourteenth Amendments to the U.S. Constitution, by the Defendant John C. Egbert, under color of law in his capacity as former Chairman of the McKean County Board of Directors, McKean County, Pennsylvania." Amended Complaint, ¶ 4. She further alleges "[b]ecause of the unilateral and cooperative actions of all Defendants, Plaintiff was deprived of every one of her Constitutional Rights of Due Process and Equal Protection under the law." Id. at 40.

In her Response to Defendant Egbert's Motion to Dismiss, however, Plaintiff explains that her Section 1983 claim against Mr. Egbert is based upon his violating her rights under the First Amendment to freedom of speech and freedom of the press, and under the Sixth Amendment to access to the courts, both Amendments being made applicable to the States through the Fourteenth Amendment. See Plaintiff's Response to Defendant John G. Egbert's Motion to Dismiss Pursuant to F.R.C.P. 12(b)(6) ("Plaintiff's Response"), p. 3. As such, we are limiting our review of Plaintiff's Amended Complaint to an examination of whether Plaintiff has stated a Section 1983 claim against Mr. Egbert based upon his violation of Plaintiff's rights under the First or Sixth Amendments to the United States Constitution, made applicable to the States through the Fourteenth Amendment to the U.S. Constitution, upon which relief can be granted.

> With respect to her claim of First Amendment violation, Plaintiff argues:
>
> Defendant Egbert, in his capacity, in effect used the authority of this office, and the position and power of the government, to seek to influence and bar further communications between the Plaintiff, The Bradford Era and its reporter, Marcie Schellhammer. His actions constituted an impermissible intrusion upon the continued exercise of free speech by the Plaintiff and the possible dissemination of relevant and newsworthy information concerning alleged corruption in the McKean County Prison.

Id. The First Amendment to the United States Constitution provides that: "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances." U.S. Constitution, First Amendment.

5

With respect to her claimed Sixth Amendment violation, Plaintiff contends:

> [a]t the time Plaintiff brought her information to the attention of Ms. Schellhammer, she showed Ms. Schellhammer evidence that Defendant Cercone had falsified official court documentation concerning her case, such that the length of Plaintiff's incarceration had been unjustly extended and that she was being denied procedural due process rights with respect to her criminal case. But for Defendant Egbert's actions, Plaintiff asserts that the attendant publicity that would have been generated by a disclosure of these circumstances would have accelerated the disposition of Plaintiff's proceedings and would have brought pressure upon the appropriate officials to bring about a more prompt resolution of Plaintiff's situation.

Plaintiff's Opposition Brief, pp. 3-4. The Sixth Amendment to the United States Constitution states: "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed, which district shall have been previously ascertained by law, and to be informed of the nature and cause of the accusation; to be confronted with the witnesses against him; to have compulsory process for obtaining witnesses in his favor, and to have the Assistance of Counsel for his defence." United States Constitution, Sixth Amendment.

42 U.S.C. §1983 ("§1983") provides, in relevant part:

> Every person who, under color of any statute, ordinance, regulations, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

Id. Section 1983 "is not itself a source of substantive rights, but a method for vindicating federal rights elsewhere conferred." Baker v. McCollan, 443 U.S. 137, 145 n. 3, 99 S.Ct. 2689, 61 L.Ed.2d 433 (1979).

6

"In any § 1983 action the initial inquiry must focus on whether the two essential elements to a § 1983 action are present: (1) whether the conduct complained of was committed by a person acting under color of state law; and (2) whether this conduct deprived a person of rights, privileges, or immunities secured by the Constitution or laws of the United States." Parratt v. Taylor, 451 U.S. 527, 535, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981), overruled on other grounds by Daniels v. Williams, 474 U.S. 327, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986). Moreover, while the Third Circuit court has not specifically addressed the issue of proximate causation with respect to individual liability under Section 1983, we find, consistent with other district courts in this circuit and other circuit courts that: "[u]nder § 1983, liability attaches to any person who '"causes" any citizen to be subjected to a constitutional deprivation ... [not only by] direct personal participation in the deprivation, but also by setting in motion a series of acts by others which the actor knows or reasonably should know would cause others to inflict the constitutional injury'." Guarrasi v. Gibbons, 2009 WL 2778669, *8 (E.D. Pa. Aug. 27, 2009) (*quoting* Johnson v. Duffy, 588 F.2d 740, 743-44 (9th Cir.1978) (emphasizing use of word "cause" in text of §1983)). See, for example, Rudolph v. Clifton Heights Police Dep't, 2008 WL 2669290, *4 (E.D. Pa. July 7, 2008) (adopting proximate causation analysis of Williams, *infra*.); Williams v. Pa. State Police Bureau of Liquor Control Enforcement, 144 F.Supp.2d 382, 384 (E.D. Pa.2001) (explaining that Third Circuit precedent excludes liability under § 1983 based on respondeat superior, but not based on proximate causation and finding the Ninth Circuit's analysis on this issue "persuasive and most consistent with the language of § 1983."); McCleester v. Mackel, 2008 WL 821531, *12 (W.D. Pa. Mar. 27, 2008) (using term "setting in motion"); Pilchesky v. Miller, 2006 WL 2884445, *5 (M.D. Pa. Oct. 8, 2006) (citing Williams). See also Morris v.

7

Dearborne, 181 F.3d 657, 672-73 (5th Cir.1999); Sales v. Grant, 158 F.3d 768, 776 (4th Cir.1998), cert. den'd, 532 U.S. 1020, 121 S.Ct. 1959 (2001); Snell v. Turner, 920 F.2d 673, 700 (10th Cir.1990), cert. den'd, 499 U.S. 976, 111 S.Ct. 1622 (1991); Darnell v. Ford, 903 F.2d 556, 561 (8th Cir.1990); Gutierrez-Rodriguez v. Cartagena, 882 F.2d 553, 560-61 (1st Cir.1989); Conner v. Reinhard, 847 F.2d 384, 396-97 (7th Cir.), cert. den'd, 488 U.S. 856, 109 S.Ct. (1988).

To summarize Plaintiff's Section 1983 claim against Mr. Egbert, Plaintiff alleges that after she contacted and was interviewed by a reporter from The Bradford Era in prison, Mr. Egbert "visited" the newspaper's office and "warned" employees "against printing anything derogatory about her husband, who was a County employee. Amended Complaint, ¶ 36. Mr. Egbert also asked for the name of the newspaper's attorney "implying that the County would sue if the newspaper violated his directive." Id. Finally, "based upon Defendant Egbert's conduct and interference with the potential assistance offered by Ms. Schellhammer and the newspaper, his actions contributed to Plaintiff's continued detention at the McKean County Prison and further contributed to the refusal by the newspaper to publicize the destruction of Plaintiff's home and deaths and injury to Plaintiff's rescue animals." Id. at ¶ 37.

As stated above, in order to withstand a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6), the factual allegations of Plaintiff's Amended Complaint must be sufficient to show that the plaintiff has a "plausible claim for relief," i.e. they must be "enough to raise a right to relief above the speculative level" such that the court can draw the reasonable inference that the defendant is liable for the misconduct alleged. Plaintiff's factual allegations do not meet this challenge. Rather her claim that her constitutional rights were violated by Mr. Egbert because after he went to the offices of The Bradford Era and spoke to its employees, the newspaper did

not publish a story about her incarceration and the damage done to her house and her animals requires a leap in logic that amounts to pure speculation on the part of Plaintiff as to what difference a newspaper story might have made to her legal situation or to her house and animals and fails to "nudge" her Section 1983 claim across the line from conceivable to plausible. Indeed, it is purely implausible speculation. As such, Defendant's motion to dismiss Plaintiff's Section 1983 claim for failure to state a claim upon which relief can be granted must be granted.[1]

**IV. Dismissal With or Without Prejudice.**

Once a court has decided to grant a motion to dismiss for failure to state a claim upon which relief can be granted pursuant to Fed.R.Civ.P. 12(b)(6), the court must next decide whether leave to amend the complaint must be granted. As explained in Phillips v. County of Allegheny, 515 F.3d 224 (3d Cir. 2008): "if a complaint is vulnerable to 12(b)(6) dismissal, a district court must permit a curative amendment, unless an amendment would be inequitable or futile. Id. at 116 (citations omitted).

In this case we see no way that the Amended Complaint against Mr. Egbert could be sufficiently amended to survive another motion to dismiss. The absence of newspaper publicity about a litigant's contentions simply does not rise to the level of a constitutional deprivation. Therefore, we find that an amendment would be futile and will dismiss the Plaintiff's Amended Complaint against Mr. Egbert with prejudice.

---

[1] Given this conclusion, it is unnecessary to address Mr. Egbert's remaining arguments as to why Plaintiff's Section 1983 claim against him should be dismissed and we elect not to do so at this time.

## V. Conclusion.

An appropriate Order follows.

June 9th, 2010

*Maurice B. Cohill, Jr.*
Maurice B. Cohill, Jr.
Senior District Court Judge