IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| CATHERINE F. LANGELLA, | ) |
| Plaintiff | ) |
| v. | ) Case No. 09-cv-312E |
| DOMINIC A. CERCONE, JR. et al., | ) |
| Defendants | ) |

## OPINION

Pending before this Court is the "Motion to Dismiss Plaintiff's Amended Complaint on Behalf of Defendants Magisterial District Judge Dominic A. Cercone, Jr. and Family Law Master Deborah Willson Babcox" ("the Judicial Defendants") [Doc. #20]. For the reasons set forth below, the Judicial Defendants' Motion to Dismiss is granted. With respect to Family Law Master Babcox, said dismissal is with prejudice. With respect to Magisterial District Justice Cercone, said dismissal is with prejudice to the extent Plaintiff's Section 1983 claim is based upon Magisterial District Justice Cercone's conduct in 2007 and is without prejudice to the extent Plaintiff's Section 1983 claim is based upon Magisterial District Justice Cercone's conduct in 2009.

**I.    Standards of Review.**

As explained by the Third Circuit Court in Fowler v. UPMC Shadyside, 578 F.3d 203 (3d Cir. 2009):

> when presented with a motion to dismiss for failure to state a claim, district courts should conduct a two-part analysis. First, the factual and legal elements of a claim should be separated. The District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions. Id. Second, a

> District Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "plausible claim for relief." Id. at 1950. In other words, a complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to "show" such an entitlement with its facts. See Phillips, 515 F.3d at 234-35. As the Supreme Court instructed in Iqbal, "[w]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not 'show[n]'-'that the pleader is entitled to relief.' " Iqbal, 129 S.Ct. at 1949. This "plausibility" determination will be "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id.

Fowler, 578 F.3d at 210-211. See also Iqbal, 129 S.Ct. at 1949 (quoting Bell Atlantic Corp. v. Twombly, 127 S.Ct. 1955, 1965-66 (2007) ("a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."); Twombly, 127 S.Ct. at 1965 (factual allegations of a complaint "must be enough to raise a right to relief above the speculative level."). "This [standard] 'does not impose a probability requirement at the pleading stage,' but instead 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of' the necessary element." Phillips v. County of Allegheny, 515 F.3d 224, 234 (3d Cir. 2008) (quoting Twombly, 127 S.Ct. at 1965). Thus, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Twombly, 127 S.Ct. at 1965 (citations omitted).

In examining a *pro se* complaint that has been challenged by a motion to dismiss, said complaint is to be liberally construed. Alston v. Parker, 363 F.3d 229, 234 (3d Cir. 2004) (citing Dluhos v. Strasberg, 321 F.3d 365, 369 (3d Cir. 2003)). Indeed, the Supreme Court has held

that, after Twombly, the Court is required to hold a *pro se* complaint, "to less stringent standards than formal pleadings drafted by lawyers," however inartfully pled. Erickson v. Pardus, 127 S.Ct. 2197, 2200 (2007) (citing Estelle v. Gamble, 97 S.Ct. 285 (1975)). See also Holley v. Dept. of Veterans Affairs, 165 F.3d 244, 247-48 (3d Cir. 1999) (holding that the court must read a *pro se* complaint for substance and apply the applicable law, regardless of whether the plaintiff used the appropriate names for his or her claims).

## II. Factual Allegations.

### A. Factual allegations related to Family Law Master Babcox.

Relevant to her claims against Family Law Master Babcox, Plaintiff alleges the following. Family Law Master Babcox is currently the court-appointed Family Law Master of McKean County, Pennsylvania. Amended Complaint, ¶ 9. Plaintiff had filed a Petition for Spousal Support on October 23, 2007, and a hearing on Plaintiff's Petition was scheduled to be heard before Family Law Master Babcox on December 17, 2007. Id. at ¶ 29. Family Law Master Babcox had been a friend, associate and colleague of Plaintiff's husband for more than 20 years. Id. at ¶ 30. At the hearing, Family Law Master Babcox allowed Plaintiff's husband to speak for more than 30 minutes, testifying that his wife had hit him and stolen from his checking account. Id. at ¶ 31. When Plaintiff's husband was through testifying, Plaintiff began to testify that her husband had been abusive for many years, had multiple addictions, and that she was in possession of a copy of his online addictions journal. Id. When Plaintiff attempted to give a copy of the addictions journal to Family Law Master Babcox, Family Law Master Babcox put up her hand, told Plaintiff "Mrs. Langella, I am not interested in anything you have to say," and then stated "Mrs. Langella, I am not interested in anything you have to show me." Id. Family Law

Master Babcox thereafter ruled that she was not awarding Plaintiff any spousal support as she had determined that Plaintiff's husband had proven that he was an injured spouse. Id. Family Law Master Babcox did not allow Plaintiff to put on any defense or rebuttal. Id.

Plaintiff then asked Family Law Master Babcox why she was hearing the matter as she obviously had serious bias and prejudice. Id. at ¶ 32. Family Law Master Babcox then said she would ask that "someone else" hear Plaintiff's Petition. Although Plaintiff had no source of income, had no vehicle and no resources, nothing else was scheduled for months after that hearing. Id.

As a result of Family Law Master Babcox's actions, Plaintiff was subject to extreme mental and emotional distress, and was deprived of reasonable spousal support to care for herself, as well as monetary contributions from Plaintiff's husband to care for Plaintiff's rescue animals for many months, causing Plaintiff to literally go begging for food and supplies for both herself and her animals, as well as to suffer the termination of telephone services, repeated threatened cut-off of gas and electric service, water and sewer services, impending mortgage foreclosure, deprivation of any transportation costs and the inability to resume working outside the home due to the removal of Plaintiff's vehicle by Plaintiff's husband. Id. at ¶ 33.

**B. Factual allegations related to Magisterial District Judge Cercone.**

Relevant to her claims against Magisterial District Judge Cercone, Plaintiff alleges that following. Judge Cercone is a District Judge in the Magisterial District 48-1-01, City of Bradford, McKean County, Pennsylvania. Id. at ¶ 7. On October 22, 2007 Plaintiff was charged with simple assault and harassment for striking her husband, then the McKean County Chief Public Defender. Id. at ¶¶ 12 and 18. She was arraigned before Magisterial District Judge

4

Cercone, a long-time colleague and friend of Plaintiff's husband, who set bail at $5000, unsecured, but with the condition that Plaintiff was to have no contact with her husband. Id. On November 2, 2007, Magisterial District Judge Cercone was advised that Plaintiff had violated the terms of her bail. Plaintiff was arrested, placed in a holding cell, a bail revocation hearing was held by Magisterial District Judge Cercone, and Plaintiff was remanded to the McKean County Prison ("the Prison") to await a previously scheduled Preliminary Hearing that was scheduled for November 12, 2007. Id. at ¶ 13.

During the bail revocation hearing, Plaintiff attempted to testify that she had not intentionally violated the terms of her bail, and was repeatedly cut off by Magisterial District Judge Cercone. Id. at ¶14. After Magisterial District Judge Cercone advised that she would "sit in jail" until the date of her Preliminary Hearing, Plaintiff begged and pleaded with Magisterial District Judge Cercone to be allowed to go home to take care of her more than forty (40) rescue animals, explaining that many of the animals were in bad health and that she was the only one that would care for the animals. Id. In response and in front of witnesses, Magisterial District Judge Cercone began to ridicule Plaintiff, telling her she had "more important things to worry about" than her animals. Id. at ¶ 15. Plaintiff was then transferred to the Prison where she remained for forty-two (42) days, until December 12, 2007. Id. at ¶¶ 16-17, 23.

During Plaintiff's time in the Prison, Magisterial District Judge Cercone repeatedly denied Plaintiff's requests to be able to attend her Preliminary Hearing and to have her bail reinstated. Id. at ¶ 17. Plaintiff's appointment of counsel had to go though the McKean County Public Defender's office, her husband's office. Id. at ¶ 18. On numerous occasions, Magisterial District Judge Cercone stated that he would not allow Plaintiff a preliminary hearing until she

had appointed counsel. Id. Plaintiff's husband's secretary from the Public Defender's Officer also told Judge Cercone that Plaintiff wanted to appear at a preliminary hearing without counsel, but Magisterial District Judge Cercone denied that request. Id. at ¶ 19. A corrections officer from the Prison also spoke with Magisterial District Judge Cercone's secretary and later with Magisterial District Judge Cercone to advise Magisterial District Judge Cercone that Plaintiff was requesting a preliminary hearing and/or reinstatement of her bail; Judge Cercone advised the corrections officer that he had "no intention of giving Plaintiff a hearing or reinstating her bail." Id. at ¶ 20.

Magisterial District Judge Cercone later falsified an official court document to attempt to show that Plaintiff had appointed counsel, Attorney James Martin, and that Attorney Martin had requested an additional continuance of two (2) weeks for Plaintiff's preliminary hearing. Id. at ¶ 21. As of the date of the purported requested continuance, Attorney Martin has not yet been appointed to represent Plaintiff, and Magisterial District Judge Cercone again refused to allow Plaintiff to appear at a preliminary hearing. Id.

During the time period when Magisterial District Judge Cercone was repeatedly denying Plaintiff's request for a preliminary hearing and/or reinstatement of her bail, many of Plaintiff's rescue animals died. Id. at ¶ 22.

Plaintiff finally had a preliminary hearing on December 12, 2007. Id. at ¶ 23. During the hearing Magisterial District Judge Cercone threatened Plaintiff with involuntary commitment to a psychiatric facility and gave Plaintiff until 5:00 on December 12, 2007, to find a psychiatrist that would attest to him that Plaintiff did not need to be involuntarily committed. Id. When Plaintiff told Magisterial District Judge Cercone that she had been told that she no longer had a vehicle

because her husband had taken the car, and therefore, she did not have transportation, Magisterial District Judge Cercone stated in open court "that's not my problem." Id.

Two years later, on December 9, 2009, Plaintiff called Magisterial District Judge Cercone's office to ask for an appointment with Magisterial District Judge Cercone. Id. at ¶ 24. Magisterial District Judge Cercone's secretary told Plaintiff to come to the office any time after lunch. Id.

Plaintiff went to Magisterial District Judge Cercone's office and asked to speak with him in private, telling him that she wanted to speak with him "face-to-face" to discuss the events from 2007. Id. at ¶ 25. Magisterial District Judge Cercone agreed to speak with Plaintiff with one of his secretaries present. Id.

Once Plaintiff began speaking with Magisterial District Judge Cercone about his actions from 2007 in her case, Magisterial District Judge Cercone told Plaintiff he had "done nothing" to her, jumped up, told her to leave or he would "call the police," and, as Plaintiff was leaving, shouted to his office staff "I think Cathy is having another episode; I think we should call Stoney." Id. at ¶ 26. Stoney Greenman is a mental health professional. Id. Magisterial District Judge Cercone then asked Plaintiff if she "needed to be committed." Id. Plaintiff left Magisterial District Judge Cercone's office and returned to work. Id. at ¶ 27. The total amount of time Plaintiff spent in Magisterial District Judge Cercone's office was approximately five (5) minutes. Id.

Within two (2) hours of Plaintiff returning to work, Plaintiff's husband received a phone call from Todd Godwin of the Office of the Attorney General, who informed him that Magisterial District Judge Cercone had lodged a complaint with McKean County Adult Probation, the

Attorney General's Office and the Bradford City Police Department. Id. As a result of Judge Cercone's actions, Plaintiff became terrified that Judge Cercone would again imprison her in some fashion, using his position and power to control Plaintiff's very existence. Id. at ¶ 28.

**III. Legal Analysis of Plaintiff's 42 U.S.C. § 1983 claims.**

**A. Claims with respect to Family Law Master Babcox.**

Plaintiff states the following with respect to Family Law Master Babcox: "Plaintiff brings this suit pursuant to Title 42 U.S. Code §1983 for violation of certain protections guaranteed to her by the First, Fifth, Eighth, Ninth and Fourteenth Amendments to the U.S. Constitution, by the Defendant Deborah W. Babcox, under color of law in her capacity as Family Law Master of the County of McKean, Pennsylvania. Id. at ¶ 3. Again, she also alleges "[b]ecause of the unilateral and cooperative actions of all Defendants, Plaintiff was deprived of every one of her Constitutional Rights of Due Process and Equal Protection under the law." Id. at 40.

In her Response to Defendant's Motion to Dismiss, however, Plaintiff clarifies her claim against Family Law Master Babcox: "Plaintiff avers that Defendant Babcox denied her basic due process of law and, as a result, was deprived of access to spousal support for more than three months." Plaintiff's Response, p. 2. See also Id. at p. 6 ("the record of the proceedings before her demonstrate a clear bias and prejudice toward the Plaintiff and a denial of the most basic legal right of due process."); Id. ("The actions of Defendant Babcox as alleged in Plaintiff's complaint implicate clear bias and prejudice, denial of basic due process and left the Plaintiff no immediate recourse for access to the Court to pursue her clam for spousal support.").

**B. Section 1983 claim against Magisterial District Judge Cercone.**

In her Amended Complaint, Plaintiff states as follows with respect to her claims against Magisterial District Judge Cercone: "Plaintiff brings this suit pursuant to Title 42 U.S. Code §1983 for violation of certain protections guaranteed to her by the First, Fifth, Eighth, Ninth and Fourteenth Amendments to the U.S. Constitution, by the Defendant Dominic A. Cercone, Jr., under color of law in his capacity as a District Magisterial District Judge in Magisterial District 48-1-01, City of Bradford, McKean County, Pennsylvania. Amended Complaint, ¶ 2. She further alleges "[b]ecause of the unilateral and cooperative actions of all Defendants, Plaintiff was deprived of every one of her Constitutional Rights of Due Process and Equal Protection under the law." Id. at 40.

In her Response to Defendants' Motion to Dismiss, she clarifies her Section 1983 claim against Magisterial District Judge Cercone with respect to the allegations concerning Magisterial District Judge Cercone in 2007:

> the first series of allegations [in 2007] implicate actions by Defendant Cercone which denied Plaintiff the right to a timely preliminary hearing, in violation of her basic due process rights. Plaintiff's liberty was being restrained and the courts have recognized a legal right of a prisoner to proceed pro se, or unrepresented by counsel. Denial of adequate access to the courts is a violation of the basic Constitutional rights." Plaintiff's Response, p. 6 (citations omitted).
>
> Plaintiff's Complaint and Amended Complaint allege that Defendant Cercone denied Plaintiff access to his court and to a preliminary hearing on the criminal charges filed and pending against Plaintiff. The Complaint alleges that Defendant Cercone falsified an official court document and continued the November 14, 2007, scheduled preliminary hearing, reciting that the continuance was at the request of Defendant's counsel when, in fact, no counsel had yet been appointed.

Plaintiff's Response, pp. 6-7. Plaintiff does not enumerate in her Response what constitutional

9

right(s) Magisterial District Judge Cercone's conduct in 2009 violated. However, based upon the arguments contained in Plaintiff's Response, we find that Plaintiff is alleging that said conduct violated her liberty interest in personal security. See Plaintiff's Response, p. 3 ("Plaintiff had asked permission to speak with Defendant Cercone, was given permission, and had broken no law, but still was threatened with jail and involuntary commitment by Defendant Cercone"); Id. at pp. 4 ("with respect to . . . Plaintiff's claims regarding the incident at Defendant Cercone's office on December 9, 2009, . . . his actions were meant to threaten, harass and instill fear in Plaintiff, being fully aware of what he had done to Plaintiff previously . . . ."); Id. at pp. 7-8 ("Plaintiff's Amended Complaint alleges that, in response to Plaintiff's request to speak to Defendant Cercone about the prior incidents in 2007, Defendant Cercone became verbally abusive and threatening toward Plaintiff in front of his office staff, creating extreme emotional distress and fear to Plaintiff."). In Ingraham v. Wright, 430 U.S. 651, 97 S.Ct. 1401 (1977), the Supreme Court stated that "[a]mong the historic liberties [protected by the due process clause] was a right to be free from, and to obtain judicial relief for, unjustified intrusions on personal security." Id. at 673.

### C. Applicability of Judicial Immunity.

The Judicial Defendants' motion to dismiss is based upon the contention that Plaintiff's Section 1983 claims against them must be dismissed with prejudice because they are barred due to Family Law Master Babcox and Magisterial District Judge Cercone being entitled to absolute judicial immunity.[1] "Plaintiff's claims for monetary damages against Judicial Defendants are

---

[1] The Judicial Defendants also summarily state: "[p]ursuant to Rule 10(c) of the Federal Rules of Civil Procedure, Judicial Defendants hereby incorporate as if fully set forth the legal arguments, to the extent applicable, set forth co-Defendant Egbert's previously filed Motion to

10

based on her disagreement with Judicial Defendants rulings made in proceedings involving Plaintiff. The doctrine of judicial immunity bars damages claims against Judicial Defendants based on such allegations." Brief in Support of Judicial Defendants Motion to Dismiss Plaintiff's Amended Complaint ("Judicial Defendants' Supporting Brief"), pp. 3-4. See also Id. at p. 5 ("[a]ll of Judicial Defendants contacts with Plaintiff were in their judicial capacities and within their jurisdiction.").

### 1. Judicial Immunity and Family Law Master Babcox.

With respect to Family Law Master Babcox, Plaintiff first argues that judicial immunity does not apply with respect to her Section 1983 claim against Family Law Master Babcox because Family Law Master Babcox lacked jurisdiction over Plaintiff by virtue of her bias and prejudice in favor of Plaintiff's husband with respect to the Petition for Spousal Support. In particular, Plaintiff argues that based upon Family Law Master Babcox's prior long-standing relationship with Plaintiff's husband, Family Law Master Babcox knew or should have known that the Rules of Judicial Conduct required her to recuse herself if she felt that she could not be fair and impartial toward Plaintiff, that Family Law Master Babcox's actions during the hearing

---

Dismiss Plaintiff's Amended Complaint."
    Fed.R.Civ.P. 10(c) states in pertinent part: "[a] statement in a pleading may be adopted by reference elsewhere in the same pleading or in any other pleading or motion." This rule of civil procedure does not provide a legal mechanism whereby a court should consider legal arguments raised in another party's motion to dismiss; incidentally, a motion to dismiss is not a pleading. See Fed. R. Civ. P. 7 (pleadings include complaint, answer, reply to counterclaim, answer to cross-claims, third party complaint and third-party answer and, by order of court, a reply to an answer or third-party answer).
    More importantly, it is not this Court's responsibility to search another party's motion to determine which, if any, of the arguments set forth in said motion are applicable to a different defendant and the Court will not do so in this case. In the future, if a party wants to utilize a specific legal argument already advanced to this Court in another party's motion, the party shall take the time to fully transcribe said argument into his or her document.

clearly demonstrated a lack of impartiality that denied Plaintiff's due process of law, and therefore, Family Law Master Babcox lacked jurisdiction over Plaintiff. Plaintiff's Response, p. 4.

Plaintiff further argues that judicial immunity does not apply to her Section 1983 claim against Family Law Master Babcox because Family Law Master Babcox was acting in an administrative action, and not in any way as a matter of adjudication when she unilaterally and erroneously chose to ignore the Rules of Judicial Conduct and to oversee the matter, even though she was personally biased and was not impartial, all which denied Plaintiff any meaningful or proper access to the court system to pursue any claim for spousal support for more than three months. Id.

As recently explained by the Third Circuit court in Capogrosso v. The Supreme Court of New Jersey, 588 F.3d 180 (3d Cir. 2009): "'A judicial officer in the performance of his duties has absolute immunity from suit and will not be liable for his judicial acts'. 'A judge will not be deprived of immunity because the action he took was in error, was done maliciously, or was in excess of his authority; rather, he will be subject to liability only when he has acted "in the clear absence of all jurisdiction"'." Id. at 184 (quoting Azubuko v. Royal, 443 F.3d 302, 303 (3d Cir.2006); Stump v. Sparkman, 435 U.S. 349, 356-57, 98 S.Ct. 1099 (1978)). Here, Plaintiff has not alleged any facts which would show that Family Law Master Babcox acted either in the complete absence of jurisdiction or in a non-judicial (for example administrative) capacity with respect to Plaintiff. To the contrary, all of the alleged actions taken by Family Law Master Babcox related to judicial actions she took as a judicial officer. That Family Law Master Babcox allegedly acted with bias, partiality and prejudice in performing these judicial acts does not

12

eliminate the applicability of judicial immunity. See Mireles v. Waco, 502 U.S. 9, 11, 112 S.Ct. 286, 288 (1991) ("judicial immunity is not overcome by allegations of bad faith or malice"). Accordingly, Family Law Master Babcox is entitled to absolute immunity from suit by Plaintiff and her motion to dismiss Plaintiff's Amended Complaint must be granted with prejudice.

### 2. Judicial Immunity and Magisterial District Judge Cercone.

With respect to Magisterial District Judge Cercone, Plaintiff argues that judicial immunity does not apply with respect to her Section 1983 claim against him because:

> his actions in repeatedly denying Plaintiff access to a Preliminary Hearing was not in the nature of an adjudicatory function but rather an administrative act regarding the scheduling of a hearing and access to the court itself.
>
> Also with respect to Defendant Cercone and Plaintiff's claims regarding the incident at Defendant Cercone's office on December 9, 2009, the Defendant had no legal matter concerning the Plaintiff pending before him and, as such, his actions were meant to threaten, harass, and instill fear in Plaintiff, being fully aware of what he had done to Plaintiff previously, and were in no way connected to an adjudicatory function.

Plaintiff's Response, pp. 4-5. Plaintiff also argues that given the unusual fact pattern of this case, Magisterial District Judge Cercone should have recused himself form Plaintiff's case at the outset. Id. at p. 7.

With respect to Plaintiff's allegations concerning Magisterial District Judge Cercone's action in 2007, we find that all of the alleged action undertaken by Magisterial District Judge Cercone in 2007, including his alleged falsification of a court document to make it appear that Plaintiff's attorney had requested an additional continuance of two (2) weeks for Plaintiff's preliminary hearing when Plaintiff did not even have an attorney at that juncture in the proceedings, related to judicial actions and were not taken in the complete absence of jurisdiction or in a non-judicial, administrative, capacity. Again, as with Family Law Master Babcox's

13

alleged conduct, that Magisterial District Judge Cercone allegedly acted with bias, partiality and prejudice in performing these judicial acts does not eliminate the applicability of judicial immunity Accordingly, Magisterial District Judge Cercone is entitled to absolute immunity from suit with respect to the claims brought against him as a result of his conduct in 2007 and his motion to dismiss Plaintiff's Amended Complaint must be granted with prejudice with respect to this part of Plaintiff's Section 1983 claim against him.

With respect to the alleged action undertaken by Magisterial District Judge Cercone in 2009, however, we agree with Plaintiff that said actions were not undertaken in a judicial capacity. Therefore, Magisterial District Judge Cercone is not entitled to judicial immunity with respect to this part of Plaintiff's Section 1983 claim filed against him and the Judicial Defendants' motion to dismiss this part of Plaintiff's Amended Complaint on the basis of the applicability of judicial immunity is denied

That said, we will still dismiss Plaintiff's Amended Complaint against Magisterial District Judge Cercone with respect to Magisterial District Judge Cercone's conduct in 2009 because Plaintiff's Amended Complaint fails to state a Section 1983 claim against Magisterial District Judge Cercone upon which relief can be granted. As stated above, we read the allegations in Plaintiff's Amended Complaint about Magisterial District Judge's Cercone's conduct in 2009 to be alleging a violation of Plaintiff's liberty interest in personal security as secured by the Fourteenth Amendment to the United States Constitution.

Section 1983 provides in relevant part:

Every person who, under color of any statute, ordinance, regulations, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities

14

secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress ... .

Id. "In any § 1983 action the initial inquiry must focus on whether the two essential elements to a § 1983 action are present: (1) whether the conduct complained of was committed by a person acting under color of state law; and (2) whether this conduct deprived a person of rights, privileges, or immunities secured by the Constitution or laws of the United States." Parratt v. Taylor, 451 U.S. 527, 535, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981), overruled on other grounds by Daniels v. Williams, 474 U.S. 327, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986). Section 1983 "is not itself a source of substantive rights, but a method for vindicating federal rights elsewhere conferred." Baker v. McCollan, 443 U.S. 137, 145 n. 3, 99 S.Ct. 2689, 61 L.Ed.2d 433 (1979). Our focus is on the second essential element of Plaintiff's Section 1983 claim-whether Magisterial District Judge Cercone's conduct in 2009, if true, violated Plaintiff's liberty interest in personal security guaranteed to her under the Fourteenth to the United States Constitution.

Allegations of verbal abuse, threats, or harassment generally are not actionable under Section 1983. See, for example, Burkholder v. Newton, 116 Fed.Appx. 358, 360 (3d Cir. 2004) (quoting Ramirez v. Holmes, 921 F.Supp. 204, 210 (S.D.N.Y.1996)) (explaining "[i]t is well established that '[a]llegations of threats or verbal harassment, without injury or damage, do not state a claim under 42 U.S.C. § 1983'."). Courts have held that a plaintiff may obtain relief under Section 1983 if verbal threats are accompanied by a reinforcing act. See, for example, Northington v. Jackson, 973 F.2d 1518 (10th Cir. 1992) and Douglas v. Marino, 684 F.Supp. 395 (D.N.J. 1988).

Applying this law to the allegations contained in Plaintiffs' Amended Complaint with respect to Magisterial District Judge Cercone's conduct in 2009, the Amended Complaint

15

contains only allegations that Magisterial District Judge Cercone verbally abused, threatened, and/or harassed Plaintiff, unaccompanied by a reinforcing act; Magisterial District Judge Cercone's subsequent action of lodging a complaint with McKean County Adult Probation, the Attorney General's Office and the Bradford City Police Department does not constitute a reinforcing act. As such, with respect to Judge Cercone's conduct in 2009, the Amended Complaint does not state a Section 1983 claim for violation of Plaintiff's rights under the Fourteenth Amendment upon which relief can be granted and this part of Plaintiff's Section 1983 claim against Judge Cercone must be dismissed. This dismissal, however, is without prejudice Plaintiff to file an amendment curing this deficiency, within the time frame set forth in the accompanying Order.

**IV. Conclusion.**

An appropriate Order follows.

June 9th, 2010

Maurice B. Cohill, Jr.
Senior District Court Judge